**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-01371-STV

LEONITE FUND I, LP,

      Plaintiff,

v.

HAWAII BREWERY DEVELOPMENT CO., INC.;
WAIAKEA BOTTLING INC.;
WAIAKEA INC; and
MARCUS I BENDER,

      Defendants.

---

**ORDER**

---

Entered by Chief Magistrate Judge Scott T. Varholak

      This matter is before the Court on Defendants Waiakea Bottling Inc.'s and Waiakea Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint for Lack of Personal Jurisdiction (the "Waiakea Motion to Dismiss") [#14] and Defendants Hawaii Brewery Development Co. Inc.'s and Marcus Bender's Motion to Dismiss for Insufficient Service of Process and Lack of Personal Jurisdiction (the "HBDC Motion to Dismiss") [#36] (collectively, the "Motions"). The Motions are before the Court on the Parties' consent to have a United States magistrate judge conduct all proceedings in this action and to order the entry of final judgment. [##42, 46] This Court has carefully considered the Motions and related briefing, the entire case file, and the applicable case law, and has determined that neither oral argument nor an evidentiary hearing would materially assist in the disposition of the Motions. For the following reasons, the Motions are **GRANTED**.

I.    **FACTUAL BACKGROUND**[1]

Plaintiff Leonite Fund I, L.P. alleges that Defendants Hawaii Brewery Development Co. Inc. ("HBDC"), HBDC's principal Marcus I. Bender ("Bender"), and Waiakea Bottling Inc. and Waiakea Inc. (collectively, "Waiakea") unlawfully interfered with Plaintiff's ability to collect a debt owed by Hawaiian Springs LLC ("HSLLC") and HSW Holding Corporation ("HSW") (collectively, the "Borrowers").   [#1 at ¶¶ 1-7]   The Borrowers' water-bottling business is subject to a court-ordered receivership estate administered by Receiver Robert L. Stevens pursuant to an order entered in a related action in this District.  *Leonite Fund I, LP v. Hawaiian Springs, LLC, et. al*, No. 1:24-cv-00149-NYW-STV (the "Underlying Receivership Action").  Plaintiff alleges that Defendants' conduct at issue in the instant action was aimed at disrupting the receivership and harming Plaintiff's debt-collection rights.  [#1 at ¶¶ 1-7]

According to the Complaint, HSLLC-HSW's right to occupy and operate from the bottling premises derives from a long-term lease relationship with HBDC.  [*Id.* at ¶¶ 21-30]  On or around November 20, 2006, HSLLC-HSW became HBDC's tenant through an assignment of an original June 1, 2001 lease between HBDC and Hawaiian Natural Water Company Inc. ("HNWC").  [*Id.* at ¶ 21] Defendant Bender signed the original 2001 lease in his capacity as President of both the lessor (HBDC) and the lessee (HNWC).  [*Id.*]  The lease term runs through September 30, 2044, with an option to extend through September 30, 2094, and HBDC promised HSLLC-HSW quiet enjoyment of the premises.  [*Id.* at ¶¶

---

[1] The facts are drawn from the allegations in Plaintiff's Complaint (the "Complaint") [#1], which for purposes of Defendants' Rule 12(b)(2) challenge, the Court accepts as true to the extent they are uncontroverted by Defendants' affidavits.  *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

22-23]  The lease, which contains a mandatory arbitration provision, permits HBDC to extract water from the well for brewing beer or manufacturing beverages other than natural water, but only to the extent that such extraction does not interfere with or restrict the lessee's business.  [*Id*. at ¶¶ 24-25]  The leased property consists of approximately seven acres at 16-305 Volcano Road, Kea'au, Hawaii, including improvements such as a commercial water bottling plant, a water well, pumping equipment, and related infrastructure used for onsite bottling operations.  [*Id*. at ¶¶ 27-28]  In 2023, the landlord-tenant relationship became the subject of eviction and breach-of-contract proceedings initiated by HBDC in Hawaii state court.  [*Id*. at ¶¶ 29-30]

Prior to those eviction proceedings, however, in September 2022, Plaintiff entered into a secured lending relationship with HSLLC and HSW.  [*Id*. at ¶¶ 31-35]  Specifically, the Complaint alleges that on September 28, 2022, Plaintiff loaned funds to HSLLC and HSW under a senior secured promissory note in the principal amount of $1,578,947.37 (purchase price $1,500,000), disbursed in tranches including an initial $650,000 payment, with $400,000 designated for inventory and working capital.  [*Id*. at ¶¶ 32-33]  Plaintiff further alleges that the promissory note entitled Plaintiff to the appointment of a receiver upon default, and that HSLLC and HSW contemporaneously executed a pledge and security agreement granting Plaintiff a security interest in collateral.  [*Id*. at ¶¶ 34-35]  The promissory note was amended on March 20, 2023.  [*Id*. at ¶ 36]  Either before or after that amendment, but at some point after the Hawaii eviction proceedings began, Plaintiff advanced additional funds to HSLLC-HSW intended, among other things, to cure rent arrears and other obligations to HBDC.  [*Id.* at ¶ 30]

On December 13, 2023, Plaintiff issued a notice of default advising HSLLC and HSW that they were in default and that $2,254,323.58 was due, and that the default entitled Plaintiff to seek appointment of a receiver as a matter of right under the promissory note and security agreement.  [*Id*. at ¶ 37]  Plaintiff alleges that it was concerned that if HSLLC failed to meet its obligations under the lease or otherwise, HSLLC would lose access to its sole source of water and collapse operationally and financially, causing substantial harm to stakeholders including Plaintiff.  [*Id*. at ¶ 38]  Thereafter, on December 26, 2023, HSW, as sole manager of HSLLC, unanimously consented to the irrevocable appointment of a receiver.  [*Id*. at ¶ 39]  And on January 1, 2024, HSLLC, HSW, and Plaintiff agreed Colorado law would govern their agreements and that venue for disputes would lie in Colorado state and federal courts.  [*Id*. at ¶ 40]

Thus, on January 18, 2024, Plaintiff filed the Underlying Receivership Action in this District against HSLLC and HSW and moved under Federal Rule of Civil Procedure 66 to appoint Robert L. Stevens as a receiver.  [*Id*. at ¶¶ 41-42]  Plaintiff alleges that it sought a receivership, in part, because it believed HSLLC's assets, including access to the spring water, were at risk if the Borrowers were evicted by their landlord, and that Plaintiff also sought to stay the Hawaii eviction litigation.  [*Id*. at ¶ 43]  On February 1, 2024, United States District Judge Nina Y. Wang granted the motion and appointed Stevens as Receiver, finding the Borrowers were in danger of "waste, eviction, loss, and further litigation," thereby staying proceedings against HSLLC and HSW including the Hawaii eviction litigation.  [*Id*. at ¶ 44]  The Complaint alleges that at the time of the appointment, HSLLC was faltering and behind on numerous obligations, and that the Receiver sought

to restore power to the facility and resume bottling operations to maximize estate value and position the Borrowers for an acquisition.  [*Id*. at ¶¶ 45-46]

According to the Complaint, beginning in April 2024, Defendants interfered with the receivership and the bottling operation.  [*Id*. at ¶¶ 47-60]  The Complaint alleges that on April 21, 2024, the Receiver traveled to Hawaii and met with plant manager Ken Tokuda, and on April 22, 2024, the Receiver conducted a site visit and spoke with Defendant Bender.  [*Id*. at ¶¶ 47-48]  Plaintiff alleges that during the site visit the Receiver hired a locksmith to change the locks, and that two individuals identified as Waiakea employees approached the locksmith in a threatening and intimidating manner.  [*Id*. at ¶¶ 49-50]  Plaintiff alleges that one of those individuals called Defendant Bender during the lock change after the Receiver produced the Receivership Order, and that after the Receiver produced a spare key for the landlord he was instructed to provide it to the landlord's employee.  [*Id*. at ¶¶ 51-52]  According to the Complaint, the Receiver reported that HBDC was difficult to work with despite rent being paid since December 2023, and that HBDC asserted a technical lease default tied to a royalty arrangement and a power purchase agreement.  [*Id*. at ¶¶ 54-55]

The Complaint alleges that around the same time, HBDC installed a "T-joint" at the well site to redirect water flow to itself without explanation.  [*Id*. at ¶ 56]  Because HBDC failed to explain the purpose of the T-joint, plant management filed a police report.  [*Id*. at ¶ 58]  Ultimately, because the T-joint raised concerns with the Hawaii Department of Health, it was removed.  [*Id*.]  After the incident, management secured the property by chaining gates and installing at least eighteen security cameras.  [*Id*. at ¶ 60]

Plaintiff alleges that although the lease permitted limited HBDC extraction for non-water beverages, HBDC's extraction was limited to non-interference with the lessee's business.  [*Id.* at ¶ 57]  Moreover, the lease required metering and pro rata payments for utilities, maintenance, repair, and replacement costs based on gallonage pumped.  [*Id.* at ¶ 59]  The Complaint alleges that HBDC failed to meet these payment obligations.  [*Id.*]

According to the Complaint, after HBDC intervened in the Underlying Receivership Action, HBDC continued to press for termination of the receivership and otherwise impeded the Receiver's work.  [*Id.* at ¶¶ 61-75]  HBDC moved to intervene on April 26, 2024, disputing Plaintiff's security interest in the lease and asserting counterclaims and crossclaims seeking, among other relief, declaratory and injunctive relief and claims tied to HSLLC's grant of a security interest.  [*Id.* at ¶¶ 61-62]  After intervention was allowed on May 23, 2024, HBDC continued to advocate aggressively for termination of the receivership despite the Receiver's restart of plant operations in June 2024 and the bringing current of lease obligations.  [*Id.* at ¶ 63]  In the Underlying Receivership Action, the Receiver maintained that HBDC benefited from the receivership by accepting rent payments and insisting that the Receiver restore power and protect the property, while simultaneously creating expense through adversarial filings and seeking to take receivership assets for itself.  [*Id.* at ¶¶ 64-67]  The Receiver subsequently reported operational progress with Plaintiff's financial backing and anticipated positive cash flow by the end of 2024 or early 2025, while HBDC reserved challenges to interim fees and objected to Plaintiff funding operations.  [*Id.* at ¶¶ 71-75] Plaintiff alleges that because Plaintiff sought the receivership pursuant to express loan-document rights, Defendants'

ongoing conduct interfered with Plaintiff's contractual rights to collect on its loan. [*Id*. at ¶ 68]

Finally, Plaintiff alleges Defendants escalated interference through false regulatory complaints to the Hawaii Department of Health in September 2024, culminating in a shutdown order halting bottling operations on October 3, 2024. [*Id*. at ¶¶ 76-107] The Receiver has reported that HBDC instructed its Hawaii counsel to send a letter to regulators containing false statements about operations and that HBDC issued a notice on September 13, 2024 asserting health and safety concerns based on information from an "independent contractor." [*Id*. at ¶¶ 76-79] According to the Complaint, the purported contractor was actually an employee of Waiakea, a competitor of HSLLC-HSW, and that the "inspection" relied on an April 2024 report predating the Receiver's substantive work and predating state approval to resume operations obtained around June 2024. [*Id*. at ¶¶ 80, 83-84, 86-88] Plaintiff alleges that in a September 27, 2024 letter to the Department of Health, authorized by Defendant Bender, HBDC repeated misrepresentations about unsanitary conditions and again attributed them to an "independent contractor" whom Plaintiff maintains was the same Waiakea employee discussed earlier. [*Id*. at ¶¶ 88-93] Plaintiff further alleges that the Receiver did not authorize competitor inspections and was troubled that the inspection report was prepared by a competing company's employee who was not licensed and was motivated to injure the Borrowers. [*Id*. at ¶¶ 94-97] According to the Complaint, the false reports caused the Department of Health to order HSLLC-HSW to cease bottling activities on October 3, 2024 pending a new inspection and 50-state water purity testing, forcing at least a four-week production halt. [*Id*. at ¶¶ 100-103] Plaintiff alleges the shutdown

caused Plaintiff harm because it had advanced significant capital to fund operations, and the Receiver warned that the path to positive cash flow would take longer if landlord interference continued, while also reporting that the landlord's owner was unwilling to stop interfering despite the Receivership Order. [*Id*. at ¶¶ 105-107]

Plaintiff initiated this action on May 1, 2025. [#1] The Complaint asserts six causes of action: (1) intentional interference with business or contractual relations against all Defendants [*id*. at ¶¶ 109-120]; (2) civil conspiracy against all Defendants [*id.* at ¶¶ 121-133]; (3) commercial disparagement against all Defendants [*id.* at ¶¶ 134-141]; (4) tortious interference with prospective economic advantage against all Defendants [*id.* at ¶¶ 142-149]; (5) violation of the Colorado Consumer Protection Act against all Defendants [*id.* at ¶¶ 150-158]; and (6) unfair methods of competition under Haw. Rev. Stat. § 480-2 against all Defendants [*id.* at ¶¶ 159-165]. On July 14, 2025, the Waiakea Defendants filed the Waiakea Motion to Dismiss, arguing that this Court lacks personal jurisdiction over them. [#14] Plaintiff has responded to the Waiakea Motion to Dismiss [#22] and the Waiakea Defendants have replied [#24]. On October 7, 2025, the HBDC Defendants filed the HBDC Motion to Dismiss which argues insufficient service of process and lack of personal jurisdiction. [#36] Plaintiff responded to the HBDC Motion to Dismiss [#49] and the HBDC Defendants have replied [#51].[2]

---

[2] In their Reply, the HBDC Defendants withdrew their argument for insufficient service of process. [#51 at 1] The Court therefore addresses only lack of personal jurisdiction.

## II.    STANDARD OF REVIEW

### A.  Federal Rule of Civil Procedure 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) permits a party to move to dismiss alleged claims against them for lack of personal jurisdiction. "Where the court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists." *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008). "The district court is given discretion in determining the procedure to employ in considering a motion to dismiss for lack of jurisdiction.  Facts regarding jurisdictional questions may be determined by reference to affidavits, by a pretrial evidentiary hearing, or at trial." *Clear Spring Prop. & Cas. Co. v. Arch Nemesis, LLC*, No. 22-2435-DDD-TJJ, 2024 WL 3511274, at *5 (D. Kan. July 23, 2024) (quoting *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992) (internal quotation marks, citations, and ellipses omitted)). "[D]ue process does not require an oral hearing, and a district court has discretion to decide a motion to dismiss without one." *Id.* (quoting *Frischenmeyer v. Werholtz*, 459 F. App'x 759, 761 (10th Cir. 2012)). "Nor does Fed. R. Civ. P. 12(i) mandate an oral (evidentiary) hearing.  Rule 12(i) provides that, if a party moves it, 'must be heard' on a Rule 12(b)(1)–(7) defense or Rule 12(c) motion 'unless the court orders a deferral until trial.'" *Id.* (quoting Fed. R. Civ. P. 12(i)). "But '[b]eing "heard" does not equate to an evidentiary hearing or oral hearing on [the] motion.'" *Id.* (quoting *Tracy v. Weber Cnty.*, No. 1:23-CV-90, 2023 WL 6916713, at *1 (D. Utah Oct. 19, 2023)); *see also Greene v. WCI Holdings Corp.*, 136 F.3d 313, 316 (2d Cir. 1998) ("Every circuit to consider the issue has determined that the 'hearing' requirements of Rule 12 and Rule 56 do not mean that an oral hearing is

necessary, but only require that a party be given the opportunity to present its views to the court.")).

"Where a district court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *AST Sports Sci., Inc.*, 514 F.3d at 1056-57. "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). The Court also accepts the well-pleaded facts in the complaint "as true to the extent they are uncontroverted by the defendant's affidavits." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (quotation omitted). "If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.* (quotation omitted). "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating that the presence of some other considerations would render jurisdiction unreasonable." *OMI Holdings, Inc.*, 149 F.3d at 1091 (quotation omitted).

## III.    ANALYSIS

The Waiakea Defendants and the HBDC Defendants each move to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. [##14, 36] The Court begins by setting forth the applicable legal framework and then considers whether it has personal jurisdiction over each Defendant.

In a diversity case, personal jurisdiction is determined by the law of the forum state and the requirements of due process. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (Federal Rule of Civil Procedure 4(k)(1)(A) "commands the district court . . . to apply the law of the state in which the district court sits."). "A plaintiff seeking to invoke a Colorado court's jurisdiction over a non-resident defendant must comply with the requirements of [Colorado's] long-arm statute and constitutional due process." *Touchtone Grp., LLC v. Rink*, 913 F. Supp. 2d 1063, 1074-75 (D. Colo. 2012) (quoting *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005)). Because "Colorado's long-arm statute . . . confers the maximum jurisdiction permissible consistent with the Due Process Clause . . . the first, statutory, inquiry effectively collapses into the second, constitutional, analysis." *Dudnikov*, 514 F.3d at 1070. "Due process requires both that the defendant 'purposefully established minimum contacts within the forum State' and that the 'assertion of personal jurisdiction would comport with fair play and substantial justice.'" *Old Republic Ins. Co. v. Cont'l Motors*, Inc., 877 F.3d 895, 903 (10th Cir. 2017) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

"Depending on their relationship to the plaintiff's cause of action, an out-of-state defendant's contacts with the forum state may give rise to either general (all-purpose) jurisdiction or specific (case-linked) jurisdiction." *Id.* "If a defendant is subject to specific personal jurisdiction, the asserted cause(s) of action must arise from the specific contacts with the forum that gave rise to jurisdiction; whereas, if a defendant is subject to general personal jurisdiction, the asserted cause(s) of action may be unrelated to the defendant's contacts with the forum." *Carnrick v. Riekes Container Corp.*, No. 15-cv-01899-CMA-KMT, 2016 WL 740998, at *2 (D. Colo. Feb. 24, 2016).

A court obtains general personal jurisdiction "when a defendant is essentially at home in the State." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 358 (2021) (quotations omitted). "With respect to a corporation the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quotation omitted). A corporation can also be subject to general jurisdiction if it has "continuous and systematic general business contacts with the forum State," which emulate "physical presence in the state." *Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 614 (10th Cir. 2012) (quotations omitted).

"Specific jurisdiction calls for a two-step inquiry: (a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Old Republic Ins. Co.*, 877 F.3d at 904 (quoting *Burger King*, 471 U.S. at 476-77). "[T]he 'minimum contacts' test for specific jurisdiction encompasses two distinct requirements: first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (quotation omitted).

Plaintiff argues that Defendants engaged in tortious conduct that caused harm in Colorado. [*See generally* #1] In determining specific personal jurisdiction for tort-based actions, courts apply a "purposeful direction" test. *Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014) Under that test, the court may exercise personal jurisdiction over a non-resident defendant where there is evidence of: "(a) an intentional action . . . that

was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state." *Id.*; *see also Ullom v. Doctors Collection Serv., Inc.*, No. 17-cv-0740-WJM-STV, 2018 WL 619755, at *3 (D. Colo. Jan. 30, 2018) ("A plaintiff must establish not only that defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that defendants undertook intentional actions that were expressly aimed at that forum state." (quotation omitted)). The focus of this analysis is on "the relationship among the defendant, the forum, and the litigation," not the relationship between Plaintiff and Defendant. *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quotation and emphasis omitted). As the Supreme Court has explained:

> [M]ere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.

*Walden v. Fiore*, 571 U.S. 277, 290 (2014) Thus, in order for Plaintiff to successfully show that Defendants' alleged tortious conduct creates specific personal jurisdiction, Plaintiff must show that Defendants purposefully directed their conduct toward Colorado.

Here, the Complaint alleges that this Court has personal jurisdiction over Waiakea because it conducts business in the State of Colorado, invoking general jurisdiction. [#1 at ¶ 18] The Complaint alleges that this Court has personal jurisdiction over the HBDC Defendants because they intervened in the related Underlying Receivership Action pending before this Court and, by asserting counterclaims and crossclaims in that action, consented to this Court's jurisdiction. [*Id.* at ¶ 17] Finally, Plaintiff alleges that both sets of Defendants interfered with the receivership: Waiakea, a direct competitor of HSLLC and HSW that lacked an adjacent bottling facility at its own well, allegedly had a financial

motive to disrupt the receivership and knowingly collaborated with HBDC to interfere with the Receiver's administration of the estate, while HBDC, as landlord of the receivership premises, allegedly repeatedly interfered with the Receiver's administration despite the Receivership Order staying landlord-tenant proceedings and prohibiting such interference.  [*Id.* at ¶¶ 2-7]  The Court addresses each argument in turn.

### A.   General Personal Jurisdiction over Waiakea Defendants

Plaintiff alleges that this Court has personal jurisdiction over the Waiakea Defendants because they "conduct business" in the State of Colorado.  [*Id.* at ¶ 18]  To the extent Plaintiff intends this allegation to support the exercise of general personal jurisdiction, it falls well short.  General jurisdiction exists only where a defendant's affiliations with the forum state are so "continuous and systematic" as to render the defendant essentially "at home" in the forum, typically the state of incorporation or principal place of business.  *Daimler*, 571 U.S. at 137-39.  "Only a select 'set of affiliations with a forum' will expose a defendant to such sweeping jurisdiction."  *Ford Motor Co.*, 592 U.S. at 358 (quoting *Daimler*, 571 U.S. at 137).  In only an "exceptional case" should a court exercise general jurisdiction over a nonresident defendant.  *Daimler*, 571 U.S. at 139 n.19.

The Complaint does not allege that Waiakea is incorporated in Colorado, maintains its principal place of business here, or has contacts with Colorado approaching the exceptional circumstances required to establish general jurisdiction outside those typical grounds.  According to Waiakea, they have "no presence, no office, and no agents in this state." [#14 at 4] "Though Waiakea water may be purchased in Colorado, Defendants

conduct no direct sales to any consumers in Colorado and do not market their products in Colorado." [*Id*.]

In its Response, Plaintiff argues that Waiakea's water is available for sale at retail locations in Colorado and on its website targeting Colorado residents, thereby establishing personal jurisdiction. [#22 at 3-4] With respect to the retail sales, the Tenth Circuit has consistently held that ordinary commercial activity with forum residents does not meet the demanding standard to establish general personal jurisdiction. *See Shrader*, 633 F.3d at 1243 (explaining that engaging in commerce with forum residents is not, by itself, the type of activity that approximates physical presence for purposes of general jurisdiction); *Monge*, 701 F.3d at 614-15, 620 (rejecting general jurisdiction based on commercial contacts that fell short of rendering the defendant "essentially at home"). And even contracts with Colorado retailers to distribute these products, without more, do not establish the purposeful availment of minimum contacts sufficient to confer personal jurisdiction. *See Burger King*, 471 U.S. at 478 ("[A]n individual's contract with an out-of-state party alone" does not "automatically establish sufficient minimum contacts in the other party's home forum." (emphasis omitted)). Simply put, "something more than merely placing a product into the stream of commerce is required to establish minimum contacts for jurisdictional purposes." *Colo. Cas. Ins. Co. v. Fu San Mach. Co., Ltd.*, No. 16-cv-01244-RBJ, 2017 WL 3189879, at *7 (D. Colo. May 15, 2017) (quotation omitted); s*ee also Fischer v. BMW of N. Am., LLC*, 376 F. Supp. 3d 1178, 1184-87 (D. Colo. 2019) (holding that the plaintiff failed to show "something more" required for personal jurisdiction where BMW's vehicles were sold nationwide through independent dealers, but the plaintiff did not allege forum-specific targeting). "Absent direction or control, the mere fact that a

distributor sells a defendant's product in the forum state does not support the exercise of jurisdiction." *Fischer*, 376 F. Supp. 3d at 1187 (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 878 & 887 (plurality op.), 892-93 (Breyer, J., concurring) (2011)). Accordingly, without more, the Court concludes that Waiakea's water being sold in locations in Colorado does not equate to an "exceptional case" and is insufficient to confer general personal jurisdiction.[3]

Nor does Plaintiff's use of an interactive website establish general personal jurisdiction unless it facilitates substantial commercial interaction with forum residents. *See Job Store, Inc. v. Job Store of Loveland, OH., LLC*, No. 15-cv-02228-PAB-KLM, 2016 WL 9735786, at *5 (D. Colo. Sept. 7, 2016) ("[M]erely posting information on the internet does not, in itself, subject the poster to personal jurisdiction wherever that information may be assessed." (citing *Shrader*, 633 F.3d at 1244)). As the Tenth Circuit has made clear, though "most courts would agree that operating a web site selling products to residents of a state can subject the seller to general jurisdiction in the state, depending on the nature and degree of commercial activity with the forum state[,] . . . [t]he case law sets the bar quite high . . . denying general jurisdiction absent substantial sales." *Shrader*, 633 F.3d at 1243. As a result, "[a] web site will subject a defendant to general personal

---

[3] To the extent Plaintiff is arguing for personal jurisdiction under a "stream-of-commerce" theory, that theory cannot support jurisdiction here because Plaintiff's claims do not arise from any product-related injury in the forum. The "stream-of-commerce" theory, if it applies at all, is typically limited to cases in which a plaintiff's claims arise out of injuries caused by products placed into the forum, most commonly in product liability actions. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980); *see also Fischer*, 376 F. Supp. 3d at 1183-85 (discussing the stream-of-commerce theory). It does not support the exercise of general jurisdiction, nor does it supply a basis for specific jurisdiction where, as here, the claims are unrelated to the Waiakea Defendants' product sales in the forum.

jurisdiction only when the defendant has actually and deliberately used its website to conduct commercial transactions on a sustained basis with a substantial number of residents of the forum." *Id.* (quotations and emphasis omitted).

Thus, needless to say, "[a] website, even if interactive, is insufficient to create personal jurisdiction where that website has gone unused by residents of the forum state." *Boopy Co. v. Luvee Products Corp.*, No. 04-MK-320 (OES), 2004 WL 2608265, at *5 (D. Colo. May 25, 2004). Here, Plaintiff alleges that Waiakea offers specific sales to Colorado consumers and cultivates recurring business relationships through subscription-based sales, which include account management services and recurring scheduled deliveries. [#22 at 7] But Plaintiff neither alleges nor offers evidence that Colorado residents have *specifically interacted* with Waiakea's website. Rather, through a series of exhibits, Plaintiff provides population information for the cities in which Waiakea's products are sold [*id*. at 20-47, 51-61, 66, 70]; location information for the stores in which Waiakea's products are sold [*id*. at 49, 63, 72]; and a mock purchase order showing that a Colorado resident *could* order Waiakea products from its website [*id*. at 75].[4] But Plaintiff has failed to show that Defendant's website was actually accessed by Colorado residents. As a result, the Court cannot find general personal jurisdiction on that basis.

In short, Plaintiff has failed to demonstrate that the Waiakea Defendants' are subject to general jurisdiction in Colorado. It is likely that some—though the Court has no idea how many—of the Waiakea Defendants' products have been purchased by

---

[4] The Court notes that a Colorado resident ordering from a Hawaii-based company online for a delivery is not, in and of itself, sufficient to confer general personal jurisdiction. *Shrader*, 633 F.3d at 1243 ("engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders" (quotations omitted)).

Colorado residents. But Plaintiff has not demonstrated that the Waiakea Defendants have engaged in continuous and systematic contact with Colorado such that they are essentially "at home" in Colorado. Accordingly, the Court does not have general jurisdiction over the Waiakea Defendants.

**B.    Personal Jurisdiction over HBDC for Underlying Receivership Action**

Next, Plaintiff alleges that this Court has personal jurisdiction over the HBDC Defendants because they intervened in the Underlying Receivership Action pending in this District and asserted claims in that proceeding. [#1 ¶ 17] That allegation, without more, is insufficient to establish personal jurisdiction in this separate action. A party's voluntary participation in one lawsuit does not constitute blanket consent to personal jurisdiction for all future or collateral actions. *See, e.g.*, *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 50 n. 5 (2d Cir. 1991) (holding that participation in a separate lawsuit in the forum state would not establish general jurisdiction); *Creative Photographers, Inc. v. Grupo Televisa, S.A.B.*, 763 F. Supp. 3d 618, 640 (S.D.N.Y. 2025) (same); *1730 Operating, LLC v. Cincinnati Ins. Co.*, No. CIV-22-308-J, 2022 WL 22870531, at *2 (W.D. Okla. Sept. 7, 2022) (same); *Wells Fargo Bank NA v. Wyo. Tech Inv. Grp. LLC*, 385 F. Supp. 3d 863, 876 (D. Ariz. 2019) (same); *Wyles v. Sussman*, No. 17-cv-01868-RBJ, 2018 WL 3348884, at *4 (D. Colo. July 9, 2018) (same).

Plaintiff nonetheless argues that the Court has specific jurisdiction pursuant to a theory of jurisdiction-by-intervention. [#49 at 10] As a sister court in this Circuit has explained, "[t]he policy underpinning the theory of jurisdiction-by-intervention stems from preventing an unjust asymmetry that would allow an intervenor to enjoy the full benefits

of access to a state court's *qua* plaintiff, while retaining immunity from the court's authority *qua* defendant in respect to claims asserted by the very party it was suing." *Charlampous through Charlampous v. Lee*, No. CIV-23-499-R, 2024 WL 457170, at *10 (W.D. Okla. Feb. 6, 2024) (quotation omitted).  "In other words, subjecting an intervenor to jurisdiction in the forum ensures the intervenor may not use the forum's courts as a sword while simultaneously shielding itself from the forum court's power.  Jurisdiction-by-intervention ensures a litigant may only reap the rewards of a court ruling when it bears the risk of an adverse decision." *Id.*

Here, the HBDC Defendants are not attempting to use this Court's jurisdiction as both shield and sword.  HBDC intervened in the Underlying Receivership Action as a Defendant to protect its rights as landlord, after Plaintiff and the named defendants in the underlying action consented to a receivership without informing the court in the Underlying Receivership Action that HBDC had an interest in the litigation.  [Underlying Receivership Action, ##3, 18, 26, 26-5, 36]  And while HBDC did bring counterclaims against Plaintiff in that action, those counterclaims revolved around whether Plaintiff had a valid security agreement on the leasehold interest that could justify the appointment of the Receiver.  [*Id.*, #26-5 at ¶¶ 33-42, 54-58]  Simply put, Plaintiff obtained a receivership in the Underlying Receivership Action without informing the Receivership Court that the HBDC Defendants had an interest in property subject to the receivership.  HBDC then intervened to alert the Receivership Court to that issue and defend its rights.  Such intervention does not subject the HBDC Defendants to a subsequent suit in Colorado involving "Defendants' [allegedly] unlawful attempts to interfere with [Plaintiffs'] ability to collect amounts due from its borrowers who operated a water bottling business premises

leased from HBDC" [#1 at ¶ 1] when none of that alleged interference occurred in Colorado.[5]  *See Impact Prods., Inc. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186, 1191-92 (D. Colo. 2004) (New Jersey company did not subject itself to Colorado's jurisdiction by sending cease and desist letters to a Colorado company because "a defendant's reasonable, good faith actions to protect its alleged rights . . . do not constitute 'express aiming' at the forum sufficient to establish the constitutionally required minimum contacts with the forum").

Plaintiff does not allege that HBDC expressly consented to personal jurisdiction in this action, nor does it allege facts showing that HBDC's intervention in the Underlying Receivership Action amounted to a waiver of jurisdictional objections in this litigation. Because personal jurisdiction must be assessed on a claim-specific and case-specific basis, HBDC's intervention in the Underlying Receivership Action does not supply a basis for personal jurisdiction in this case.

### C.    Personal Jurisdiction over Defendants for Hawaii Conduct

Finally, Plaintiff asserts that Defendants' conduct as alleged in the Complaint suffices for specific personal jurisdiction against all Defendants.  [##22 at 12-16; 49 at 10-16]  The Complaint alleges that Defendants' conduct included entering and tampering with a water well, diverting water through an unauthorized installation, and submitting

---

[5] This does not mean that the Receivership Court is without power to enforce its order against those who interfere with it.  By intervening in the Underlying Receivership Action, HBDC subjected itself to the Receivership Court's jurisdiction and the Receivership Court could take action against HBDC for any violation of the Receivership Order.  Indeed, Plaintiff itself acknowledges that the Receivership Court "is the court empowered to determine the scope of its own Order."  [#49 at 13 (emphasis omitted)]  But neither Plaintiff nor the Receiver have asked the Receivership Court to take any action with respect to any alleged violation of the Receivership Order.  Instead, Plaintiff filed this action seeking to recover for harm it allegedly suffered as a result of Defendants' actions in Hawaii.

false or misleading information to the Hawaii Department of Health, resulting in a regulatory shutdown of bottling operations.  [#1 at ¶¶ 3-7, 27-29, 56-60, 76-103] Critically, however, the Complaint alleges that all of this conduct occurred in Hawaii and was directed at Hawaii-based property, operations, and regulators.  The alleged physical interference took place at a bottling facility and well located in Kea'au, Hawaii [*id.* at ¶¶ 27-29, 56-60]; the alleged regulatory misconduct consisted of communications with the Hawaii Department of Health, a Hawaii state agency, concerning the condition of that same Hawaii-based facility [*id.* at ¶¶ 76-103]; and the alleged competitive motives likewise stem from the parties' positions within the Hawaii bottled-water market [*id.* at ¶¶ 10-12, 92].

The Complaint does not allege that Defendants directed communications, misrepresentations, or other conduct into Colorado; specifically targeted Colorado regulators or markets; or otherwise engaged in conduct connecting them to Colorado itself.  Rather, Plaintiff's jurisdictional theory rests on the allegation that Defendants knew Plaintiff was seeking to enforce its contractual rights through a receivership proceeding pending in this District and that Defendants' conduct would therefore have economic effects in Colorado.  [*Id.* at ¶¶ 2, 6-7, 68-70, 105-106]

Under controlling Supreme Court precedent, that theory is insufficient. The "express aiming" requirement of specific jurisdiction focuses on the defendant's contacts with the forum state itself, not on the defendant's knowledge of a plaintiff's forum connections or the foreseeability that a plaintiff will experience injury there.  *Walden*, 571 U.S. at 285-86 ("[A] defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship

with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."). As the Supreme Court has emphasized, "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285.

Here, the connection between Defendants and Colorado as it relates to the receivership is Plaintiff's own choice to pursue enforcement of its contractual rights through the State of Colorado. Although the Complaint alleges that Defendants were aware of the receivership's existence, awareness that a plaintiff's economic interests are being enforced in a particular forum does not transform otherwise out-of-state conduct into conduct "expressly aimed" at that forum. *See Walden*, 571 U.S. at 289 (rejecting jurisdiction based on defendant's knowledge of plaintiff's forum connections); *Shrader*, 633 F.3d at 1244 (foreseeable forum effects are insufficient absent forum-directed conduct). Nor does the Complaint plausibly allege that Defendants specifically targeted Colorado-based proceedings or sought to influence decisionmakers in this District. And although the alleged conduct occurred against the backdrop of a court-ordered receivership, Plaintiff does not allege that Defendants filed materials in this Court, communicated with the Receiver directly in Colorado, or otherwise attempted to manipulate or interfere with litigation activities occurring in this forum. Instead, the alleged conduct targeted the day-to-day operations of a Hawaii-based business and the actions of Hawaii regulators, with only derivative economic consequences for Plaintiff in Colorado. As set forth above, such Colorado-based results are insufficient to establish personal jurisdiction.

In short, even accepting the Complaint's allegations as true, Defendants' conduct was aimed at Hawaii-based property, regulators, and competitive interests, not at the

State of Colorado.  The alleged injury to Plaintiff in Colorado flows solely from Plaintiff's forum connections and litigation posture, which, under *Walden*, cannot supply the requisite minimum contacts.  Plaintiff has thus failed to make a prima facie showing that Defendants purposefully directed tortious conduct toward Colorado, and the Court lacks specific personal jurisdiction over Defendants.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motions to Dismiss [## 14, 36]  and **DISMISSES** Plaintiff's claims **WITHOUT PREJUDICE.** *See Hollander v. Sandoz Pharms. Corp.*, 289 F.3d 1193, 1216 (10th Cir. 2002) (dismissal for lack of personal jurisdiction should be without prejudice).[6]

DATED:  January 7, 2026                    BY THE COURT:

                                                          s/Scott T. Varholak
                                                          Chief United States Magistrate Judge

---

[6] Pursuant to 28 U.S.C. § 1631, when a court determines that it lacks personal jurisdiction, it "shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action or appeal could have been brought."  Although Section 1631 "contain[s] the word 'shall,' [the Tenth Circuit] ha[s] interpreted the phrase 'if it is in the interest of justice' to grant the district court discretion in making a decision to transfer an action or instead to dismiss the action without prejudice."  *Trujillo*, 465 F.3d at 1222-23.  "Factors considered in deciding whether a transfer is in the interest of justice include [1] whether the claims would be time barred if filed anew in the proper forum, [2] whether the claims alleged are likely to have merit, and [3] whether the claims were filed in good faith or if, on the other hand, it was clear at the time of filing that the court lacked the requisite jurisdiction."  *In re Cline*, 531 F.3d 1249, 1251 (10th Cir. 2008).  Here, Plaintiffs have neither asked this Court to transfer the matter to another court, identified another district where the action could have been brought, or analyzed the factors that the Court should consider in assessing transfer.